765 So.2d 366 (1999)
Jerry EVANS, Husband of/and Iva Mae Naquin Evans
v.
Ronald K. CROWE, Christopher D. Landry, Clarendon National Insurance Company and Highlands Insurance Company.
No. 98 CA 2422.
Court of Appeal of Louisiana, First Circuit.
December 28, 1999.
Writ Denied March 24, 2000.
Stevan C. Dittman, New Orleans, Johnny X. Allemand, Thibodaux, Counsel for PlaintiffAppellantJerry Evans.
Philip J. Borne, Kenan S. Rand, Jr., New Orleans, Counsel for DefendantAppellee Highlands Insurance Company.
Before: GONZALES, FITZSIMMONS, and WEIMER, JJ.
*367 FITZSIMMONS, J.
Jerry Evans, appellant, challenges the uninsured motorist limit of $100,000.00 of a policy written by appellee, Highlands Insurance Company (Highlands), in favor of all American Decorating Service, Inc. We reverse the district court's grant of summary judgment in favor of Highlands, and we render summary judgment in favor of Jerry Evans.

FACTS
Jerry Evans was an employee of All American Decorating Service, Inc. (All American), when he was involved in a vehicular collision. The other party involved in the accident was uninsured. It is undisputed that Mr. Evans was an omnibus insured under a liability policy issued to All American by Highlands. The uninsured motorist (UM) limit of the Highlands policy was designated as $100,000.00 pursuant to a waiver form executed by the president of All American.
Mr. and Mrs. Evans and Highlands each moved for summary judgment based on the validity vel non of the waiver. The district court granted summary judgment in favor of Highlands on the basis that Jerry Evans lacked standing to challenge his employer's selection of UM coverage.
On appeal, Mr. Evans assigns as error: (1) the court's holding that an omnibus insured lacked standing to challenge the rejection form of his employer's UM coverage, and (2) the court's concurrent denial of Mr. Evans' motion for summary judgment.

ANALYSIS

STANDING
The trial court found that Mr. Evans did not have standing to challenge his employer's selection of lower UM coverage. It is not disputed that Mr. Evans was an omnibus insured with "implied permission" to use the vehicle. Louisiana law requires that uninsured motorist coverage shall extend to all insureds under the policy. Hoey v. Shelter General Insurance Company, 98-178, p. 4 (La.App. 3rd Cir.6/3/98), 715 So.2d 512, 515, writ denied, 98-1768 (10/30/98), 727 So.2d 1160. Moreover, uninsured motorist coverage attaches to the person, not the vehicle. Hobbs v. Rhodes, 95-1937, p .8 (La.App. 4th Cir.11/30/95), 667 So.2d 1112, 1117, writ denied, 96-0733 (La.5/3/96), 672 So.2d 691.
Omnibus insureds have heretofore been accorded jurisprudential standing to assert their claim as a beneficiary of an insurance policy. As an insured under the policy, an employee would likewise qualify for uninsured motorist coverage, unless that coverage had been waived or specifically excluded. See Hobbs, 95-1937, at p. 5, 667 So.2d at 1115. The trial court erred in its interpretation that the employee lacked standing to assert coverage pursuant to his employer's insurance policy.

UNINSURED MOTORIST COVERAGE
Having recognized the omnibus insured's standing to assert the invalidity of a waiver of uninsured motorist coverage, we address the merits of the waiver in the policy before the court and the propriety of summary judgment in favor of Highlands. Appellate courts review summary judgment de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc. 93-1322, p. 4 (La. App. 1st Cir.5/20/94), 640 So.2d 616, 618. The burden of proof remains with the movant; however, summary judgment shall be rendered if the supporting evidence submitted shows that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B) and (C)(2).
It is axiomatic that an insurer must place the insured in a position to make an *368 informed rejection of uninsured motorist coverage. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197-199 (La.1992). In this respect, the insurance form must give the applicant the opportunity to make a "meaningful selection" from each of his options provided by the statute: (1) uninsured motorist coverage equal to bodily injury limits in the policy; (2) uninsured motorist coverage lower than bodily injury limits in the policy; or (3) no uninsured motorist coverage. Id. at 198. The burden of proving that rejection of UM coverage was executed, in proper form, without ambiguity, rests with the party seeking to enforce the rejection and escape UM liability. Any waiver of UM coverage must be clear and unmistakable. Id. at 197.
In the case at hand, the form of the Highlands policy entitled, "REJECTION OF UNINSURED MOTORISTS COVERAGE OR SELECTION OF LIMIT OF LIABILITY," advised the named insured, in relevant part, as follows:
The Louisiana Insurance Code (Section R.S. 22:1406), amended, permits you, the insured named in the policy, to reject the Uninsured Motorists Coverage or to select a limit of liability lower than the limit for Bodily Injury coverage in the policy but not less than the basic financial responsibility limit. Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from the owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.
* * * * * *
In accordance with the Louisiana Insurance Code ... the undersigned insured...
___ agrees that the Uninsured Motorists Coverage afforded in the policy is hereby deleted.
___ agrees that the following limit of liability which is lower than the Bodily Injury Coverage limit, applies with respect to the Uninsured Motorists Coverage afforded in the policy:

 $100,000 each person(enter limit if applicable);
 $ CSL each accident.

Robert Schenk, the president of All American, selected uninsured motorist coverage with limits of $100,000.00.
Our review of the attributes of the form under review reveals a failure to apprise the insured of the requisite third option of uninsured motorist coverage, id est, the automatic entitlement to an amount of uninsured motorist coverage equal to the liability limits of the policy. There is no place on the form where the policyholder could sign to signify that he was exercising the option of obtaining uninsured motorist coverage at liability limits; nor is there any written indicia that the insured's lack of a selection would result in uninsured motorist coverage at liability limits.
In support of its motion for summary judgment, Highlands introduced an affidavit executed by Mr. Schenk, indicating that, at the time of the waiver, he had been aware of all the uninsured motorist options, "including the option of retaining uninsured/underinsured motorists coverage limits equal to the liability limits in the policy." This court has not yet passed upon the legal viability of an affidavit confected after the insurance claim arose by the insured, for the purpose of its consideration in conjunction with an uninsured motorist waiver form.
The statutory language of La. R.S. 1406(D)(1)(a)(ii) requires a rejection or selection of lower limits to "be made only on a form designed by each insurer."[1] The judicial interpretation of the requirements for a waiver has evolved to hold that a rejection form must inform the applicant of the available options regarding uninsured motorist coverage so that the applicant can make a meaningful selection from *369 among the options provided by the statute. Tugwell, 609 So.2d at 198-199. Subsequently, in Daigle v. Authement, 96-1662, p. 4 (La.4/8/97), 691 So.2d 1213, 1215, the Louisiana Supreme Court commented that a form does not comply with the statutory requirements if "it fails to inform the applicant of an available option or forecloses an available option." Although the courts have specifically recognized that various formats for the form are acceptable, the jurisprudence has consistently adhered to the tenet that the requirements of a valid waiver be contained in the waiver form itself, as opposed to a subsequent explanatory affidavit.[2]Id.
Moreover, an "after the fact affidavit" would be susceptible to too much sauntering; it would gap the system.[3] While it might seem that the legislative requirement that the options be self-contained in a form prefers "form over substance," it is the path expressly chosen by the legislature. The requirements, as enunciated by the legislature, mandate only a simple recitation of options. They are not burdensome to the insurer; nor should they become "the road less traveled."
We conclude that the omission on the Highlands insurance waiver form of a possible selection of uninsured motorist full liability coverage is lethal to the legal viability of the waiver. It cannot be resuscitated by an insured's ex post facto affidavit. The waiver must fall, and the employee, Mr. Evans, is eligible to seek uninsured motorist coverage up to the limits of the general liability policy of Highlands.
The grant of summary judgment in favor of Highlands Insurance Company is reversed. Summary judgment is hereby rendered in favor of Jerry Evans, entitling him to seek uninsured motorist coverage to the full extent of the limits of the general liability insurance coverage. Costs associated with this appeal shall be borne by Highlands Insurance Company.
REVERSED AND RENDERED.
NOTES
[1] Subsequent to the incident at issue, La. R.S. 22:1406 was revised by 1997 La. Acts No. 1487 to require that insurers use the form prescribed by the commissioner of insurance.
[2] The only other discernable case in which the court was presented with an inadequate form that was later supplemented with an affidavit by the insured policyholder, who declared knowledge of the requisite choices at the time of the execution of the waiver, is Fontenot v. Henderson, 95-2784, p. 7 (La.App. 4th Cir.2/15/96), 670 So.2d 489, 493. In Fontenot, the plaintiff was a passenger asserting a claim against the UM carrier of the driver of the vehicle; however, the affidavit by the holder of the UM policy, contrarily, served to confirm the ambiguity of the form and lack of a meaningful selection by the policyholder.
[3] See Washington v. Savoie, 92-2957, pp. 6-7 (La.4/11/94), 634 So.2d 1176, 1180, which stated that public policy precludes the consideration of extrinsic evidence to determine the intent of the parties. The court noted a concern over "bad faith `cooperation' between an insurer who seeks to avoid payment of claims and a named insured whose premiums are fixed on the basis of its loss experience."